UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NEW ANGUS, LLC, d/b/a Demkota Ranch Beef,<br><br>Plaintiff,<br><br>vs.<br><br>PURPLE ISLES, LLC; BONE CRUSHER, LLC; MICHAEL REMPE, a/k/a Micheal Rempe,<br><br>Defendants. | 4:25-CV-04135-ECS<br><br><br><br>ORDER DENYING MOTION TO DISMISS |

Plaintiff New Angus, LLC brings various state-law breach claims against Defendants related to the construction of an animal rendering operation in Aberdeen, South Dakota. See generally Doc. 22. Pending before the Court is Defendant Michael Rempe's Motion to Dismiss Count One of Second Amended Complaint, Doc. 24. Defendant Purple Isles, LLC joins the motion. Doc. 27. Jurisdiction is premised on the parties' diversity, Doc. 22 ¶ 6; see 28 U.S.C. § 1332, so the Court applies "state substantive law and federal procedural law." Barkley, Inc. v. Gabriel Bros., Inc., 829 F.3d 1030, 1038 (8th Cir. 2016). The Master Service Agreement discussed herein is "governed by, and construed in accordance with, the laws of the State of South Dakota, without regard to conflicts of law principles." Doc. 2-1 at 4.

I.    **Facts as Alleged by Plaintiff**

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), courts "accept[ ] as true all factual allegations in the light most favorable to the nonmoving party." Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir.

2019) (citing <u>Smithrud v. City of St. Paul</u>, 746 F.3d 391, 397 (8th Cir. 2014)). Accordingly, to comply with this standard of review, the following recitation of facts is nearly verbatim as to what is stated in Plaintiff's Second Amended Complaint. Quotation marks are omitted when quoting facts from the Second Amended Complaint.

New Angus's meat packing plant in Aberdeen was built so that rendering could be done on-site, but before 2021, rendering equipment was not installed at the packing plant. Doc. 22 ¶ 8. New Angus therefore shipped animal byproducts from its packing plant to an outside facility for rendering. <u>Id.</u> The rendering entity to which New Angus was shipping animal byproducts for rendering was the only rendering entity within a one-day drive of New Angus's Aberdeen plant that would accept its business, thereby subjecting New Angus to unfavorable financial terms for rendering costs and the threat that its processing operations would have to be shut down due to inclement weather or a refusal or inability of the rendering entity to accept New Angus's animal byproducts. <u>Id.</u> In addition, by doing its own rendering, New Angus expected that it would profit from selling the products resulting from rendering, namely tallow, meat and bone meal, and blood meal. <u>Id.</u> New Angus expected that its processes and packing plant would operate more efficiently and yield a higher profit margin if rendering equipment were installed and rendering were done at the packing plant as originally designed and contemplated. <u>Id.</u>

While investigating options to design, build, and operate its own rendering process, New Angus learned about Michael Rempe, a professional rendering consultant, who represented to New Angus that he had more than 40 years of experience in the rendering industry and was knowledgeable about the rendering industry, including equipment vendors, contractors, and constructing and operating rendering facilities. <u>Id.</u> ¶ 9.

2

Michael Rempe is the authorized representative and manager of Purple Isles, LLC. Id. ¶ 2. On May 1, 2021, New Angus and Purple Isles entered into a Master Service Agreement. Id. ¶ 10. Purple Isles agreed to provide consulting and engineering services in connection with a bone processing and rendering operation ("the project") to be constructed at New Angus's meat packing plant in Aberdeen. Id. The Master Service Agreement was performed in South Dakota and provides that it is governed by South Dakota law. Id.

Acting through Rempe and pursuant to the Master Service Agreement, Purple Isles reviewed possible equipment vendors and recommended that New Angus purchase equipment for the project from Haarslev Processing Technology, a Danish company that specializes in the design and manufacture of equipment that breaks down waste byproducts from animal processing into constituent parts that can be marketed for other use. Id. ¶ 11.

Purple Isles was empowered on behalf of New Angus, and subject to New Angus's control, to solicit and screen proposals, to negotiate terms, and to make decisions concerning the project. Id. ¶ 12. Specifically, Purple Isles, through Rempe, was vested with authority to determine, subject to budgetary and other parameters set by New Angus, the equipment necessary to complete the project. Id. ¶ 13.

Purple Isles, through Rempe, was authorized to communicate and otherwise deal with third-party vendors on New Angus's behalf and to solicit proposals and bids from vendors within the parameters set by New Angus for the purpose of designing and facilitating the construction of the project. Id. ¶ 14. Purple Isles, through Rempe, accepted the authority to act on New Angus's behalf and did act on New Angus's behalf in all matters related to communicating and negotiating with third-party vendors for the project. Id. ¶ 15.

3

On New Angus's behalf, and as New Angus's representative, Purple Isles, through Rempe, is believed to have communicated with at least a dozen potential equipment vendors, to have gathered proposals and bids from them, and to have engaged in negotiations with vendors on behalf of New Angus, including determining what equipment was necessary for the project and whether a particular vendor's proposal and expertise was suitable and desirable for the project. Id. ¶ 16. Ultimately, Purple Isles, through Rempe, brought at least six vendors necessary for the completion of the project to New Angus after negotiating agreement terms with them on behalf of New Angus, and New Angus approved the proposals and paid the vendors for their work on the project. Id. ¶ 17. Purple Isles, through Rempe, acted on New Angus's behalf while remaining subject to New Angus's ultimate authority and control. Id. ¶ 18. New Angus determined the scope and parameters of the project and approved the budget, and New Angus retained control to enforce these limitations as Rempe completed his work. Id. Despite Rempe having accepted authority to work, communicate, and negotiate with third-party vendors, New Angus maintained the authority to approve or disapprove any proposal or vendor recommended by Rempe and Purple Isles. Id.

Purple Isles, through Rempe, determined what equipment was necessary for the project and handled all discussions and negotiations with Haarslev regarding procurement of the equipment. Id. ¶ 19. Other than an in-person presentation by Haarslev to New Angus that was facilitated by Rempe and for which Rempe was present, all other communications on New Angus's behalf with Haarslev were handled by Purple Isles, through Rempe, including the initial communications with Haarslev where Rempe and Haarslev decided what equipment was necessary for the project and how the project would be designed and built. Id.

Rempe is the only person who provided services to New Angus pursuant to the Master Service Agreement. Id. ¶ 20.

Based on the recommendation of Purple Isles, New Angus selected Haarslev as the primary equipment vendor for the project. Id. ¶ 21. As provided in the Master Service Agreement, New Angus paid Purple Isles $100,000 for its services. Id. ¶ 22. New Angus has fully performed its obligations under the Master Service Agreement. Id.

Purple Isles and Rempe received a 10% commission in the amount of approximately $1,000,000 from Haarslev based on New Angus's agreement to purchase rendering equipment from Haarslev. Id. ¶ 41. Purple Isles and Rempe did not disclose the commission to New Angus, which learned about it after the fact from Haarslev. Id. ¶ 42.

## II.    Procedural Posture

Based on these facts, New Angus brings a claim of Breach of Agency Relationship by Purple Isles and Rempe. Id. at 8. New Angus alleges that "[b]ased on the Master Services Agreement and Purple Isles's and Rempe's actual conduct, Purple Isles and Rempe became and acted as New Angus's agent as defined under South Dakota law." Id. ¶ 38. New Angus states "[a]n agent has a legal obligation to act solely for the benefit of the principal, to disclose all material facts to the principal, and to refrain from acquiring a material benefit from a third party in connection with transactions conducted on behalf of the principal." Id. ¶ 39. But "[t]he undisclosed commission created incentives for Purple Isles and Rempe to recommend Haarslev regardless of Haarslev's suitability and to inflate the contract price to increase the undisclosed commission payment." Id. ¶ 43. And so, New Angus argues "[t]he receipt of the undisclosed commission payment constitutes a breach of fiduciary duty and a breach of the agency relationship." Id. ¶ 44. New Angus considers its damages from this breach the amount of the

undisclosed commission. Id. ¶ 45. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Rempe moves to dismiss because (1) he did not act as New Angus's agent; and (2) he did not owe New Angus a fiduciary duty. See generally Doc. 25.

### III.    Standard of Review Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." "Although a complaint need not contain detailed factual allegations to survive a motion to dismiss under Rule 12(b)(6), it must contain 'enough facts to state a claim to relief that is plausible on its face.'" Ranchers-Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA, No. 5:24-CV-05085-ECS, 2025 WL 2783499, at *8 (D.S.D. Sept. 30, 2025) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

On a motion to dismiss under Rule 12(b)(6), "[c]ourts must accept a plaintiff's factual allegations as true" and construe all reasonable inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012) (citing Ashcroft, 556 U.S. at 678; E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 662 (8th Cir. 2012)). When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice,

matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

## IV.    Discussion

### A.    Existence of Agency Relationship

"An agency relationship is defined as 'the representation of one called the principal by another called the agent in dealing with third persons.'" Bordeaux v. Shannon Cnty. Schs., 707 N.W.2d 123, 127 (S.D. 2005) (quoting SDCL § 59-1-1). "There are two types of agency, actual and ostensible." A.P. & Sons Constr. v. Johnson, 657 N.W.2d 292, 297 (S.D. 2003). "Actual agency exists when a principal and agent expressly agree to enter into an agency relationship." Id. (citation omitted). "Ostensible agency is created when a principal by his conduct or lack of ordinary care causes a third party to believe another is acting as his agent." Id. (citation omitted).

The existence of an agency relationship "is ultimately a question of fact." Ehresmann v. Muth, 757 N.W.2d 402, 405 (S.D. 2008) (citation omitted). "[The] factual elements necessary to establish an agency relationship [are]: (1) manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking." A.P. & Sons, 657 N.W.2d at 297 (citation omitted).

Rempe argues "the relations of the parties are set forth in an agreement"—the Master Service Agreement, which "does not, in any paragraph, expressly or impliedly create an agency

7

relationship between New Angus and Purple Isles or Rempe."[1] Doc. 25 at 5. New Angus argues it has "plausibly alleged the existence of an agency relationship . . . [e]ither consistent with or beyond the terms of the Master Service Agreement." Doc. 29 at 5–6 (citation omitted). The Court agrees.

The Master Service Agreement broadly frames the relationship between New Angus and Purple Isles. See generally Doc. 2-1 at 1–4. From its face, the Court can glean only that Purple Isles agreed to perform "consulting / engineering services" for New Angus. Id. Rempe is correct that such language alone does not expressly or impliedly provide that Purple Isles would represent New Angus with third parties. The agreement states, "all Services provided" by Purple Isles to New Angus, "whether or not the subject of a Work Order, unless specifically covered by another written agreement between the parties, [are] covered by [the] agreement." Id. at 1. So, the agreement contemplates other writings—"work orders," which specify the consulting or engineering services Purple Isles will perform. Id. No such "executed Work Order[s]," id., are before the Court. But because coverage under the agreement applies to services "whether or not the subject of a Work Order," id., the agreement also contemplates work that could be performed although not specified in writing.

New Angus supplements the Court's understanding of the work undertaken and agreed to under the agreement with facts in its Second Amended Complaint. See Doc. 22. Pertinent to the question of agency, the pleading alleges Purple Isles "was empowered on behalf of New [Angus], and subject to New Angus's control, to solicit and screen proposals, to negotiate terms, and to make decisions concerning the Project." Id. ¶ 12. It further alleges Purple Isles, "through

---

[1] As New Angus observes, Rempe does not distinguish himself from Purple Isles for purposes of this motion. Doc. 29 at 5 n.5; see generally Doc. 25. As such, the Court construes Rempe and Purple Isles as interchangeable. Clark v. Sweeney, 607 U.S. 7, 9 (2025) (per curiam) (duty of parties to "frame the issues for decision" (citation omitted)).

Rempe, was authorized to communicate and otherwise deal with third-party vendors on New Angus's behalf and to solicit proposals and bids from vendors within the parameters set by New Angus for the purpose of designing and facilitating the construction of the Project." Id. ¶ 14. It states Purple Isles, "through Rempe," accepted and wielded that authority "with at least a dozen potential equipment vendors." Id. ¶¶ 15–16. These facts, accepted as true, plausibly allege manifestation by New Angus that Purple Isles should act for it, Purple Isles's acceptance of that undertaking, and the understanding of the parties that New Angus was to be in control of the undertaking. In other words, they plausibly allege an agency relationship. A.P. & Sons, 657 N.W.2d at 297.

Rempe argues that "the language of paragraph 13 [of the agreement] is antithetical to the existence of an agency relationship." Doc. 25 at 5. Rempe focuses on the sentence "At no time shall either party make any commitments or incur any charges or expenses in the name of the other party." Id. at 2, 5 (citation modified) (quoting Doc. 2-1 ¶ 13). He argues that sentence runs counter to SDCL § 59-3-1, which states, "Every act which may legally be done by or to any person, may be done by or to the agent of such person for that purpose unless a contrary intention plainly appears." Doc. 25 at 6. New Angus counters that § 59-3-1 "concerns the extent of an agent's authority . . . [not] whether an agency relationship was created in the first place." Doc. 29 at 9–10. The Court agrees.

Section 59-3-1 fixes the outer limits of an agent's authority as co-extensive with the outer limits of a principal's legal ability. The statute recognizes that limitations to the agent's authority may arise where "a contrary intention plainly appears." In other words, the parties define the bounds of the agent's authority through their plain intention. Applying the principle here, Paragraph 13 disallows Purple Isles to "make any commitments or incur any charges or expenses

in the name of [New Angus]." These are not the only acts which may be legally done by New Angus. So, the paragraph only limits Purple Isles's authority as agent.

New Angus plausibly alleges an agency relationship.

## B.        Existence of a Fiduciary Duty

"A fiduciary relationship is founded on a peculiar confidence and trust placed by one individual in the integrity and faithfulness of another." High Plains Genetics Rsch., Inc. v. J K Mill-Iron Ranch, 535 N.W.2d 839, 842 (S.D. 1995) (citation modified). "When such relationship exists, the fiduciary has a duty to act primarily for the benefit of the other." Id. (citation modified). "Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary." Id. (citation modified).

"The existence of a fiduciary duty and the scope of that duty are questions of law for the court." In re Est. of Duebendorfer, 721 N.W.2d 438, 445 (S.D. 2006) (citation omitted). Here, the Court held Plaintiff plausibly pleaded an agency relationship. As Plaintiff observes, South Dakota recognizes the general proposition that an agency relationship is a fiduciary one. Doc. 29 at 10; see Buck v. Nash-Finch Co., 102 N.W.2d 84, 89 (S.D. 1960) (citing Restatement of Agency 2d § 1(1)). But as Rempe argues, "South Dakota law [also] reflects that most commercial or business relationships do not rise to the level of a fiduciary relationship when the parties are dealing over an arms-length transaction." Cole v. Wellmark of S.D., Inc., 776 N.W.2d 240, 254 (S.D. 2009) (citation omitted); see Doc. 25 at 8. For such a business relationship to rise to the level of a fiduciary one, there must be "a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other." Cole, 776 N.W.2d at 254 (citation modified).

10

In Cole, the South Dakota Supreme Court found no fiduciary relationship between the plaintiffs and an insurance agent where the plaintiffs exhibited experience in reviewing, selecting, researching, and comparing insurance plans. Id. "They did so without demonstrating any weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other, as compared to the agents and benefits managers they interviewed." Id. (citation modified). So, no fiduciary relationship existed. Id.

So too here, Rempe argues, "where New Angus sought consulting advice to help it determine whether it should pursue a construction project and to help sort through vendors and proposals." Doc. 25 at 11. That does not square entirely with the characterization of Rempe's role as pleaded in the complaint. There, it states Rempe "was empowered on behalf of New [Angus], and subject to New Angus's control, to solicit and screen proposals, to negotiate terms, and to make decisions concerning the Project." Doc. 22 ¶ 12. Rempe was also charged with determining the equipment necessary for the rendering project. Id. ¶ 13. New Angus chose Rempe to do these things because he is "a professional rendering consultant, who represented to New Angus that he had more than 40 years of experience in the rendering industry and was knowledgeable about the rendering industry, including equipment vendors, contractors, and constructing and operating rendering facilities." Id. ¶ 9. In comparison, New Angus's only pleaded experience with rendering was outsourcing that role to another entity. Id. ¶ 8. These facts plausibly allege unequal business intelligence such that Rempe wielded an advantage over New Angus in his role as consultant. New Angus plausibly pleads a fiduciary relationship.

## V.    Order

For the above reasons, and the record as it now exists before the Court, it is hereby

11

ORDERED that Defendant Michael Rempe's Motion to Dismiss Count One of Second Amended Complaint, Doc. 24, is denied.

DATED this 15th day of July, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

12